UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Millett,                    :
                Plaintiff,        :
                                  :
     v.                           :     File No. 2:04-CV-315
                                  :
Correctional Medical              :
Services, Vermont                 :
Department of Corrections,        :
Prison Health Services,           :
Inc.,                             :
                Defendants.       :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 18)

Plaintiff James Millett, a Vermont inmate proceeding

*pro se*, has filed this action pursuant to 42 U.S.C. §

1983 claiming that the defendants have failed to provide

him with adequate medical care.  Currently pending before

the Court is defendant Correctional Medical Service's

("CMS") motion for summary judgment (Paper 18).  The

motion is unopposed.  For the reasons set forth below, I

recommend that CMS's motion be GRANTED.

Factual Background

In June, 2004, Millett was allegedly shot by police

in the left buttock.  The bullet caused, among other

things, a fracture to his femur, and surgery was

performed at Dartmouth Hitchcock Medical Center

("Dartmouth Hitchcock").  The surgical procedure did not include removal of the bullet.

In November, 2004, Millett filed the instant suit and a motion for a preliminary injunction, claiming that the bullet needed to be removed.  In response to the motion for preliminary injunction, the defendants submitted medical notes from Dr. Kenneth Koval at Dartmouth Hitchcock.  Dr. Koval's notes, dated September 27, 2004, stated that Millett was "now over three months status post surgery.  His main complaint is some knee stiffness as well as the bullet is still preset [sic] in his left buttock area."  Dr. Koval also observed that Millet was "lacking about 5-10 degrees of full left knee/elbow extension," and that Millett's x-rays showed "that the fractures are healing in the adequate position."  (Paper 5 at 7).

Dr. Koval further reported that he had instructed Millett "on stretching exercises to the left knee.  It was suggested to his prison that he get some physical therapy, do gait training, and range of motion.  The possibility of the bullet being removed was discussed. He will follow-up in one month with x-rays.  He will

2

weightbear as tolerated." Id.  Based primarily upon Dr.

Koval's notes, the Court denied Millet's motion for a

preliminary injunction.

Although Millet has not submitted any filings in

this case since the Court's ruling on the preliminary

injunction motion, the Court has ordered the defendants

to produce Millett's medical records (Paper 22).  Those

records include a document dated October 28, 2004 and

entitled "CMS OP Review Communication Form," in which it

was noted that a physician[1] had determined that removal

of the bullet was "not a medical necessity.  Continue

conservative [treatment]."  The records also show that on

January 3, 2004, a Dr. Miller made an incision in

Millett's buttock and tried to remove the bullet, but was

unable to reach it.  Millett was seen by another

physician on February 1, 2005, and expressed his desire

for the bullet to be removed.  That physician noted that

Dr. Koval would be contacted "to discuss potential

benefits of [the bullet's] removal."  As of February 1,

2005, CMS no longer provided medical services to inmates

in the custody of the Vermont Department of Corrections.

_____

[1]  The name of the physician is not clearly legible.

Discussion

I.   Summary Judgment Standard

Summary judgment may not be granted unless "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c); see also
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo
v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d
1219, 1223 (2d Cir. 1994).  Where the non-moving party
will bear the burden of proof at trial, the party moving
for summary judgment may meet its burden by showing that
the admissible evidence would be insufficient to carry
the non-movant's burden of proof at trial.  Celotex, 477
U.S. at 322-23.  If the moving party meets its initial
burden of showing a lack of a material issue of fact, the
burden shifts to the non-moving party to come forward
with "specific facts showing that there is a genuine
issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving
party must produce evidence in the record and "may not
rely simply on conclusory statements or on contentions

that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

II. Eighth Amendment Standard

In this case, Millett claims that the defendants have violated his constitutional right to decent medical care. Prisoners have a constitutional right, secured by the Eighth Amendment, to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). To establish an Eighth Amendment violation in the context of medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. See Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2002).

There are two elements to a claim of deliberate
indifference.  First, the deprivation suffered must be
objectively serious such that "a condition of urgency,
one that may produce death, degeneration, or extreme
pain" exists.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d
Cir. 1996) (internal quotations and citations omitted).
The second requirement is that the defendants acted with
a culpable state of mind.  This subjective element
requires the plaintiff to prove that a defendant "knows
of and disregards an excessive risk to inmate health or
safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A showing of negligence by the defendants is not
enough for a deliberate indifference claim.  See Estelle,
429 U.S. at 106 (stating that "[m]edical malpractice does
not become a constitutional violation merely because the
victim is a prisoner").  Instead, the plaintiff must
prove that the defendants acted with a state of mind
"equivalent to criminal recklessness."  Hemmings v.
Gorczyk, 134 F.3d 104, 109 (2d Cir. 1998) (internal
quotations omitted).  The Second Circuit has held that
"'the Eighth Amendment forbids not only deprivations of
medical care that produce physical torture and lingering

death, but also less serious denials which cause or

perpetuate pain.'" Brock v. Wright, 315 F.3d 158, 163

(2d Cir. 2003) (quoting Todaro v. Ward, 565 F.2d 48, 52

(2d Cir. 1977)).

III.   CMS's Motion for Summary Judgment

     CMS has moved for summary judgment, essentially

claiming that the evidence has not changed since the

Court denied the motion for preliminary injunction, and

citing the fact that, as of February 1, 2005, it no

longer held the contract for provision of medical

services to Vermont inmates.  The evidence of Millett's

medical care prior to February 1, 2005 supports the entry

of summary judgment on behalf of CMS.

     Dr. Koval's notes suggest that in the months

immediately after the shooting, removal of the bullet was

not an urgent medical need.  Dr. Koval also indicated

that physical therapy and range of motion exercises would

contribute to the healing process.  A subsequent note

appears to confirm that removal of the bullet was not

necessary, and that conservative treatment should be

continued.  Dr. Miller attempted to remove the bullet,

but was unable to do so.  As of February 1, 2005, doctors

were still considering the question of whether or not the
bullet should be removed.

In light of this record, it does not appear that
Millett's care prior to February 1, 2005 violated the
Eighth Amendment.  The medical records show that doctors
reviewed Millett's condition regularly, and although they
considered removing the bullet, did not conclude that its
removal was a medical necessity.  Even if the Court
considers Dr. Miller's attempt to remove the bullet,
there is no indication that Dr. Miller was acting out of
necessity.  Indeed, there is no indication that Dr.
Miller or any other physician ordered further procedures
to ensure that the bullet was removed.

Millett clearly wants the bullet removed from his
body.  However, inmates do not have a constitutional
right to the treatment of their choice.  See Dean v.
Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Moreover,
even assuming that there was disagreement among the
treating physicians about what would constitute
appropriate care, such disagreements would not state a
claim under the Eight Amendment.  See Walker v.
Connecticut, 2006 WL 1168664, at *3 (D. Conn. Apr. 25,

8

2006).  Because the evidence does not support a finding

of deliberate indifference to Millett's medical needs

prior to February 1, 2005, I recommend that CMS's motion

for summary judgment be GRANTED.

Conclusion

For the reasons set forth above, I recommend that

CMS's unopposed motion for summary judgment (Paper 18) be

GRANTED.

Dated at Burlington, in the District of Vermont,

this 21st day of June, 2006.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).